IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

ENOD L. CRAZE, JR.,

      Plaintiff,

v.                              CASE NO. 2:04-cv-01207

JO ANNE BARNHART,
Commissioner of Social Security,

      Defendant.

### PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.  This case was referred to this United States Magistrate Judge by standing order to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).  Presently pending before the court are cross-motions for judgment on the pleadings.

Plaintiff, Enod Lee Craze, Jr. (hereinafter referred to as "Claimant"), filed an application for DIB on February 11, 2003, alleging disability as of September 24, 2002, due to eye and back impairments, headaches and bowel and bladder problems.  (Tr. at 53-55, 81.)  The claim was denied initially and upon reconsideration.  (Tr. at 35-38, 42-43.)  On September 5, 2003, Claimant requested a

hearing before an Administrative Law Judge ("ALJ"). (Tr. at 44.) The hearing was held on December 10, 2003, before the Honorable Jon Johnson. (Tr. at 329-49.) By decision dated January 28, 2004, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 14-25.) By decision dated September 21, 2004, the Appeals Council considered additional evidence offered by the Claimant, but determined it did not provide a basis for changing the ALJ's decision. (Tr. at 5-8.) On November 10, 2004, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers

from a severe impairment.  Id. § 404.1520(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. § 404.1520(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. § 404.1520(e).  By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f)(2004).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy.  McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date. (Tr. at

15.)  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of lumbosacral strain, left knee strain, hypertension, gastroesophageal reflux disease[1], lumbar disc disease and spinal stenosis.  (Tr. at 19.)  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1.  (Tr. at 19.) The ALJ then found that Claimant has a residual functional capacity for sedentary work, reduced by nonexertional limitations.  (Tr. at 22.)  As a result, Claimant cannot return to his past relevant work.  (Tr. at 22.)  Nevertheless, the ALJ concluded that Claimant could perform jobs such as stationary security guard and receptionist, which exist in significant numbers in the national economy.  (Tr. at 23.)  On this basis, benefits were denied.  (Tr. at 23.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less

---

[1]  As the Claimant points out in his brief, the ALJ finds this condition to be severe and then later finds that it is nonsevere.  (Tr. at 19.)  Although it appears to the court that the ALJ intended to find that this condition was nonsevere, this issue can be resolved on remand.

4

> than a preponderance. If there is evidence to
> justify a refusal to direct a verdict were the
> case before a jury, then there is 'substantial
> evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting

Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)).

Additionally, the Commissioner, not the court, is charged with

resolving conflicts in the evidence.   Hays v. Sullivan, 907 F.2d

1453, 1456 (4th Cir. 1990).   Nevertheless, the courts "must not

abdicate their traditional functions; they cannot escape their duty

to scrutinize the record as a whole to determine whether the

conclusions reached are rational."   Oppenheim v. Finch, 495 F.2d

396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the

Commissioner in this case is not supported by substantial evidence.

Claimant's Background

Claimant was almost forty-seven years old at the time of the

administrative hearing.   (Tr. at 333.)   Claimant graduated from

high school.   (Tr. at 334.)   In the past, he worked as a laborer

for a public service district.   (Tr. at 337.)

The Medical Record

The court has reviewed all evidence of record, including the

medical evidence of record, and will summarize it briefly below

insofar as it relates to Claimant's arguments.

5

Evidence before the ALJ

Montgomery General Hospital

   Claimant injured his back at work in September of 2002.  (Tr.
at 144.)   X-rays of his lumbosacral spine showed degenerative
changes.  (Tr. at 152.)

Dr. Ramesh

   The evidence of record from H.S. Ramesh, M.D. consists of
treatment notes and other evidence dated October 3, 2002, through
April 22, 2003.  On October 3, 2002, Dr. Ramesh saw Claimant with
complaints of neck, lower back and left leg pain following a
workplace injury.  (Tr. at 201.)  Claimant had reduced lumbar range
of motion as follows: lumbar flexion was 40 degrees, lateral
flexion to the right was 12 degrees, lateral flexion to the left
was 10 degrees and lumbar extension was 14 degrees.  Straight leg
raising in the sitting position was negative at 50 degrees on the
right and 40 degrees on the left.  Patrick's test was bilaterally
positive for the reproduction of low back pain.  Claimant had
tenderness present over the bilateral sacroiliac joint.  Deep
tendon reflexes were 2/4 on the right and 2/4 on the left.  Upper
and lower extremity strength was 4-5/5.  Plantar reflexes were
within normal limits.  Pin prick was variably reduced in the left
lower extremity.  Bilateral Tinel's and Phalen's signs were
negative.  (Tr. at 204.)  Dr. Ramesh diagnosed lumbosacral
strain/sprain, sacroiliac dysfunction, myofascial pain syndrome and

degenerative joint disease.  He prescribed physical therapy, a TENS unit and Celebrex, Skelaxin and Vicodin and advised Claimant to take time off work until the next visit.  (Tr. at 205.)  Claimant also underwent paraspinal trigger point injections.  (Tr. at 200.)

On October 17, 2002, Claimant reported to Dr. Ramesh that the pain had decreased by 10 percent.  Dr. Ramesh noted that Claimant was not working because his employer did not offer modified work.  Claimant had been to physical therapy.  Lumbar range of motion was the same.  Patrick's test was positive for reproduction of pain in the bilateral sacroiliac joint.  Straight leg raising was negative at bilateral 50 degrees seated and bilateral 55 degrees in the supine position.  Pin prick, light touch and proprioception were variably reduced in the left lower extremity.  DTR's were symmetrical. (Tr. at 198.)  Dr. Ramesh's diagnoses were unchanged.  He recommended that Claimant continue physical therapy.  Dr. Ramesh noted that "[p]atient recommended returning to work on 10/18/02 with modified duty of lifting, pushing, or pulling no more than 25 pounds.  If light duty is not available please notify our office in writing."  (Tr. at 199.)  Claimant underwent joint injections. (Tr. at 197.)

On November 7, 2002, Claimant reported that the pain in his lower back and left leg had decreased by 30 percent since the first visit.  Lumbar range of motion had increased since the last visit.  The neurological examination was unchanged.  (Tr. at 195.)  Dr.

Ramesh's diagnoses remained the same.  Dr. Ramesh recommended that Claimant continue physical therapy.  Claimant received joint injections, and Claimant's range of motion improved immediately therafter.  Dr. Ramesh discontinued Vicodin and prescribed a Duragesic Transdermal Patch.  (Tr. at 196.)  Dr. Ramesh recommended that Claimant take time off from work until his next visit. Claimant informed Dr. Ramesh that his employer did not have light duty work for him.  Dr. Ramesh ordered an MRI.  (Tr. at 196.)  An MRI of the lumbar spine on November 11, 2002, showed a broad based disc bulge with questionable borderline spinal stenosis at L3-4. (Tr. at 206.)

On December 5, 2002, Claimant reported to Dr. Ramesh that the pain in his lower back and left leg had decreased by 20 percent since the first visit.  Claimant reported that his left leg had tingling and numbness.  Lumbar range of motion had increased since the last visit. Patrick's test was positive.  Straight leg raising was negative at bilateral 45 degrees seated and bilateral 55 degrees in the supine position.  The neurological examination was unchanged.  (Tr. at 192.)  Claimant underwent joint injections. Dr. Ramesh instructed Claimant to take time off from work until his next visit.  (Tr. at 193.)

On January 7, 2003, Claimant reported to Dr. Ramesh that the pain in his lower back had decreased by 15 percent since his first visit.  Lumbar range of motion had increased.  Straight leg raising

was negative at bilateral 55 degrees seated and bilateral 60 degrees in the supine position.  The neurological examination was unchanged.  (Tr. at 188.)  Dr. Ramesh recommended a functional capacity evaluation and work conditioning.  He recommended that Claimant take time off work until the next visit.  (Tr. at 189.)

On February 4, 2003, Claimant reported his pain had increased by 20 percent since his first visit.  Claimant reported problems controlling his bowel and bladder.  Claimant had been attending work conditioning since his last visit.  Lumbar range of motion was the same since his last visit.  Straight leg raising was negative at bilateral 50 degrees seated and bilateral 55 degrees in the supine position.  The neurological examination was unchanged.  (Tr. at 186.)  Dr. Ramesh recommended that Claimant continue work hardening for three more weeks and that he take time off from work until his next visit.  (Tr. at 187.)

On February 27, 2003, Claimant underwent a lower EMG and a nerve conduction velocities test to rule out lumbosacral radiculopathy versus peripheral compression neuropathy.  Both were normal.  (Tr. at 182.)  On February 27, 2003, Dr. Ramesh noted that lumbar range of motion was the same since the last visit.  Straight leg raising was negative at bilateral 45 degrees seated and bilateral 50 degrees in the supine position.  The neurological examination was unchanged.  (Tr. at 177.)  Dr. Ramesh referred Claimant to Dr. Lilly for consultation and further management and

recommended that Claimant stay off work until his visit with Dr. Lilly. (Tr. at 178.) The record does not include evidence from Dr. Lilly.

On April 22, 2003, Dr. Ramesh noted that Claimant continued to have pain in his back and down his left leg and that the pain has stayed the same with flare ups since his first visit. Dr. Ramesh further noted that Dr. Lilly recommended epidural injections. Dr. Ramesh stated that Claimant could not tolerate work hardening. (Tr. at 265.) Straight leg raising was negative at bilateral 45 degrees seated and bilateral 55 degrees in the supine position. The neurological examination was unchanged. (Tr. at 265.) Dr. Ramesh referred Claimant to Gai L. Smythe, M.D. for further management. (Tr. at 266.)

Dr. Crowe

On March 3, 2003, Robert J. Crowe, M.D., a specialist in neurological surgery, examined Claimant. Dr. Crowe reviewed Claimant's MRI of November 11, 2002, and noted that it showed multi-level spondylosis and an L3-4 central disc bulge which caused moderate canal stenosis, bilateral foraminal outlet stenosis, worse on the left than on the right. (Tr. at 172.) Claimant had negative straight leg raising. Motor exam throughout the bilateral lower extremities was notable for diffuse break-away strength involving all myotomes of the left lower extremity. Sensory examination throughout the bilateral lower extremities was notable

10

for very diffuse decreased light touch and pinprick throughout the entire left lower extremity.  Dr. Crowe concluded that Claimant had low back and left lower extremity pain with L3-4 stenosis.  Because of the significant low back pain component and the diffuse nature of the findings on examination, Dr. Crowe did not recommend surgical intervention.  Dr. Crowe recommended that Dr. Ramesh treat the L3-4 level with epidural steroids and peri-radicular nerve root injections if he had not already tried that.  Dr. Crowe noted that if conservative treatment failed, Claimant had a 50 percent chance of benefitting from surgery.  (Tr. at 173.)

<u>State Agency Medical Sources</u>

State agency medical sources opined on March 18, 2003, and July 17, 2003, that Claimant was limited to light level work, reduced by occasional postural limitations and a need to avoid concentrated exposure to hazards and vibration.  (Tr. at 209-16, 236-43.)

State agency medical sources opined on March 26, 2003, that there was no medically determinable mental impairment and, on July 25, 2003, that Claimant had no severe mental impairments.  (Tr. at 218-31, 245-58.)

<u>Dr. Smythe</u>

On March 31, 2003, Gai L. Smythe, M.D. examined Claimant at the request of Dr. Ramesh.  Dr. Smythe diagnosed degenerative disc disease with radicular symptoms, but no true radiculopathy,

11

myopathy or neuropathy consistent with dermatomal pattern. Dr. Smythe also found facet joint dysfunction and comparable SI dysfunction with strong amplification and some inconsistency. Dr. Smythe recommended three lumbar epidural steroid injections with subsequent facet joint injections. (Tr. at 235.)

Dr. Mir

On May 15, 2003, Saghir R. Mir, M.D. examined Claimant in connection with his workers' compensation claim and at the request of Workers' Compensation Fund. Dr. Mir reviewed all the evidence of record and summarized it. Dr. Mir concluded that Claimant suffered from left radicular symptoms. Dr. Mir opined that the injections were somewhat excessive, as Claimant had more radicular symptoms. Dr. Mir found some limitation in range of motion in the lumbar spine. The neurological examination revealed gross atrophy of the left calf muscle with slight intoeing of the left foot and leg. Claimant had weakness of the special extensor of the left big toe muscle and nonspecific decreased sensation in the left leg. Dr. Mir diagnosed chronic lumbosacral strain, superimposed on pre-existing degenerative disease at the lumbar spine, probable disc herniation at L3-L4 level on the left side and spinal stenosis at L3-L4 level exaggerated by herniated or bulging disc at L3-L4 level. Dr. Mir opined that Claimant had not reached the maximum degree of medical improvement and that he was temporarily disabled. Dr. Mir recommended a repeat MRI. (Tr. at 275.)

<u>Dr. Sankari</u>

The record includes treatment notes from Samar Sankari, M.D. and others dated March 1, 1999, through June 2, 2003. (Tr. at 280-303.)

<u>Functional Capacity Evaluation</u>

Claimant underwent a functional capacity evaluation on September 16, 2003. Kimberly R. Estep, M.S. concluded that the results suggested that Claimant gave an unreliable effort. (Tr. at 304.) She further classified Claimant in the sedentary to light physical demand level. She went on to state that Claimant "currently is capable of sedentary and some light duty work, and does not demonstrate abilities with those consistent for working an 8 hour day." (Tr. at 305.)

<u>Dr. Caudill</u>

James W. Caudill, M.D. examined Claimant on September 1, 2000, in consultation for an eye injury he sustained in May of 2000. Claimant's vision measured 20/400 uncorrected in the right eye and 20/30 uncorrected in the left eye. Claimant had a corneal scar in the right eye, which required keratoplasty to return it to normal visual functioning. (Tr. at 309.)

<u>Dr. Cassis</u>

Stephen P. Cassis, M.D. examined Claimant on November 1, 2000, and noted that Claimant suffers from a corneal scar and corneal thinning with irregular astigmatism. Dr. Cassis opined that

13

corneal transplantation was necessary to improve his vision in the right eye. (Tr. at 310.) On November 21, 2000, Dr. Cassis noted that Claimant has a "visually significant corneal scar." (Tr. at 311.)

Chiropractor Casto

The record includes treatment notes and other evidence from Larry Casto, B.S., D.C. dated September 25, 2003. (Tr. at 313-17.)

Evidence Submitted to the Appeals Council

Dr. Mir

Dr. Mir examined Claimant again on March 22, 2004. He reviewed medical records again in connection with his examination of Claimant. He noted that a repeat MRI on August 4, 2003, showed disc protrusion at the L3-L4 level somewhat more on the left side and some spinal stenosis. (Tr. at 322.) Dr. Mir found that Claimant had some restriction of mobility. His neurological examination revealed that Claimant had some weakness of the extensor of his left big toe muscle as well as atrophy of the left calf muscles. Claimant's sensory examination revealed non-dermatomal decreased sensation in the left leg. Dr. Mir diagnosed chronic lumbosacral strain superimposed on pre-existing spinal stenosis at the L3-L4 level and left lumbar radiculopathy secondary to disc protrusion or herniated disc at L3-L4 level on the left side. Dr. Mir opined that Claimant had reached the maximum degree of medical improvement and was not temporarily totally disabled.

14

Dr. Mir recommended a neurosurgical consultation with Dr. Weinsweig or Dr. Ignatiadis.  He opined that "[a] return to work prognosis seems very poor as patient has already applied for disability Social Security."  (Tr. at 325.)  Dr. Mir recommended a sixteen percent whole person impairment for workers' compensation purposes. (Tr. at 326.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ failed to properly analyze the medical evidence of record; (2) the ALJ erred in his residual functional capacity finding; (3) the ALJ failed to evaluate the severity of all of Claimant's impairments, including his eye impairment and obesity; and (4) the ALJ failed to properly assess Claimant's credibility.  (Pl.'s Br. at 13-23.)

The Commissioner argues that (1) substantial evidence supports the ALJ's determination that Claimant could perform a limited range of sedentary work; (2) the ALJ properly weighed the medical evidence of record; (3) the ALJ's credibility findings are supported by substantial evidence; and (4) the ALJ did not err in failing to specifically reference Claimant's weight in his decision.  (Def.'s Br. at 7-13.)

The court proposes that the presiding District Judge find that the ALJ's decision is not supported by substantial evidence because the ALJ did not fully consider and weigh the evidence from Dr.

15

Ramesh, a treating source, and Dr. Mir, an examining source, among others, in keeping with applicable regulations and caselaw.

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(d)(2) (2004). Under § 404.1527(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Section 404.1527(d)(3), (4), and (5) adds the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty).

Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. § 404.1527(d)(2) (2004). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. § 404.1527(d)(2) (2004).

16

Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." § 404.1527(d)(2).

Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1994).

Under § 404.1527(d)(1), more weight generally is given to an examiner than to a non-examiner. Section 404.1527(d)(2) provides that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). The Fourth Circuit Court of Appeals has held that "a non-examining physician's opinion cannot by itself, serve as substantial evidence supporting a denial of disability benefits when it is contradicted by all of the other evidence in the record." Martin v. Secretary of Health, Education and Welfare, 492 F.2d 905, 908 (4th Cir. 1974); Hayes v. Gardener, 376 F.2d 517, 520-21 (4th Cir. 1967). Thus, the opinion "of a non-examining physician can be relied upon when it is consistent with the record." Smith v. Schweiker, 795 F.2d 343, 346 (4th Cir. 1986) (more weight given to an opinion by

17

a specialist about issues in his/her area of specialty).

In his decision, the ALJ stated that the medical evidence of record included an October 17, 2002, recommendation from Dr. Ramesh that Claimant could return to modified duty work consistent with medium work activity. The ALJ stated that "Dr. Ramesh's assessment is supported by the objective medical evidence, the claimant's treatment history and his activities of daily living. Further, Dr. Ramesh is a treating physician and is knowledgeable of the claimant's condition. Accordingly, the undersigned gives Dr. Ramesh's assessment significant weight." (Tr. at 20.)

In explaining the weight afforded the evidence from Dr. Ramesh, the ALJ's decision gives the impression that Dr. Ramesh believed Claimant was capable of medium level work. However, a review of Dr. Ramesh's treatment notes in their entirety, as summarized above, leaves quite a different impression. As Claimant points out, Dr. Ramesh actually stated on October 17, 2002, that Claimant could return to work "with modified duty of lifting, pushing, or pulling no more than 25 pounds" (Tr. at 199), an opinion that does not necessarily support a finding that Claimant can perform all the requirements of medium level work. 20 C.F.R. 404.1567(c) (2004). More importantly, after this statement made early on his treatment of Claimant, Dr. Ramesh consistently stated thereafter that Claimant could not work. (Tr. at 178, 184, 189, 190.)

While the evidence from Dr. Ramesh does not contain a residual functional capacity assessment, it does provide "a detailed, longitudinal picture" of Claimant's condition. See 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). The ALJ's decision simply does not contain an analysis of whether the evidence from Dr. Ramesh is supported by clinical and laboratory diagnostic techniques or whether it is consistent with other substantial evidence of record. Ward, 924 F. Supp. at 55.

Indeed, the ALJ's decision is generally devoid of any in depth discussion of the medical evidence of record, particularly that from Dr. Crowe, Dr. Mir, Dr. Smythe and Dr. Ramesh, nor does the ALJ engage in any meaningful weighing of the evidence from these sources in keeping with the factors identified in the regulations at 20 C.F.R. § 404.1527(d)(2).

With regard to Dr. Mir, the ALJ stated that he afforded little weight to his opinion because "Dr. Mir ... does not have the luxury of a treating history of the claimant and his opinion was based on a one-time evaluation and is not supported by the objective findings and treatment history." (Tr. at 21.) While Dr. Mir was not a treating source, the ALJ neglected to mention that Dr. Mir reviewed the medical evidence of record. Moreover, the ALJ erred in failing to explain why he determined that Dr. Mir's opinions are not supported by the objective findings and treatment history. Claimant's case is a close one. Claimant is only able to perform

a limited range of sedentary work and, once he reaches age fifty, he meets the Medical-Vocational Guidelines. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00, Table No. 1, Rule 201.12 (2004). Yet the ALJ's decision does not contain a sufficient analysis from which the court can conclude that his findings related to the weight afforded various medical sources of record are in keeping with applicable regulations and case law and supported by substantial evidence.

The court further proposes that the presiding District Judge find that the Appeals Council erred in finding that the new evidence from Dr. Mir dated March 22, 2004, did not provide a basis for changing the ALJ's decision. The Appeals Council specifically incorporated the evidence from Dr. Mir into the administrative record. As a result, the court must review the record as a whole, including the new evidence, in order to determine if the Commissioner's decision is supported by substantial evidence. Wilkins v. Secretary, 953 F.2d 93, 96 (4th Cir. 1991). Though dated a few months after the ALJ's January 28, 2004, decision, Dr. Mir's report refers to the results of a repeat MRI on August 4, 2003, which are not contained in the evidence of record before the ALJ. Furthermore, the evidence from Dr. Mir suggests continued deterioration of Claimant's condition and should be considered by the ALJ on remand in evaluating Claimant's condition.

Finally, the court proposes that the presiding District Judge

find that the ALJ's decision does not contain a pain and credibility analysis in keeping with the applicable regulation, case law and social security ruling ("SSR"). 20 C.F.R. § 404.1529(b)(2004); SSR 96-7p, 1996 WL 374186 (July 2, 1996); Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). As with the weight afforded the medical evidence of record, the ALJ's decision lacks a sufficient explanation as to why the ALJ found Claimant's subjective complaints to be not entirely credible.

The court declines to make recommendations to the presiding District Judge regarding the remaining arguments raised by Claimant. These issues can be addressed on remand.

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge GRANT the Plaintiff's Motion for Judgment on the Pleadings to the extent he seeks remand for further proceedings and otherwise DENY Plaintiff's Motion, DENY the Defendant's Motion for Judgment on the Pleadings, REVERSE the final decision of the Commissioner, and REMAND this case for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g) and DISMISS this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable John T. Copenhaver, Jr. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have

ten days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record.

December 15, 2005
Date

Mary E. Stanley
United States Magistrate Judge